## John A. Frinzi, Inc. v. Rittberg

*Jerome Balka*, for plaintiff.
*Gary Figore* and *John F. Oldt*, for defendants.

GRIFO, *J.*, October 1, 1974—This matter arises from plaintiff's interpleader action in equity to determine whether defendants, Samuel H. and Ida G. Rittberg (hereinafter "Rittberg"), or defendants, Charles and Jean Dibilio, Jr. (hereinafter "Dibilio"), are entitled to an earnest money deposit in the amount of $3,675 held by plaintiff, John A.

Frinzi, Inc., Realtors (hereinafter "Frinzi"). Defendants Rittberg and Dibilio filed an agreed statement of facts with the court on June 3, 1974. After the pleadings were completed and briefs filed, a hearing was held on August 7, 1974, and now we make the following

## FINDINGS OF FACT

1. Defendants Rittberg were the owners of the property at 8 Logan Drive, in Palmer Township, Northampton County, Pa.

2. On July 27, 1973, defendants Dibilio signed an agreement of sale to buy that property for $36,750, with settlement to be on or before October 30, 1973.

3. Defendants Dibilio posted an earnest money deposit with plaintiff Frinzi in the amount of $3,675.

4. The agreement of sale indicates in paragraphs 7(a) and 7(b) the title that defendants Rittberg were required to deliver to defendants Dibilio on settlement, specifically stating:

"7(a). The premises are to be conveyed free and clear of all liens, encumbrances, and easements, EXCEPTING, HOWEVER, the following: mortgage encumbrances as aforementioned, if any; existing building restrictions, ordinances, easements of roads, privileges or rights of public service companies, if any; agreements or like matters of record of easements or restrictions visible upon the ground, otherwise the title to the above-described real estate shall be good and marketable or such as will be insured by a reputable Title Insurance Company at the regular rates.

"7(b). In the event the Seller is unable to give a good and marketable title or such as will be insured by a reputable Title Company, subject to aforesaid,

Buyer shall have the option of taking such title as the Seller can give without abatement of price or of being repaid all monies paid by Buyer to the Seller on account of the purchase price together with costs for searching title as he may have incurred; and in the latter event there shall be no further liability or obligation on either of the parties hereto and this agreement shall become null and void and all copies will be returned to Seller's agent for cancellation."

5. Subsequently, defendants Dibilio examined the title of the Rittberg property and discovered an easement granted to the Metropolitan Edison Company (hereinafter "Met Ed"), and recorded in the Recorder of Deeds Office, Northampton County Courthouse (Misc. Book 146, page 118), on October 25, 1963.

6. The easement granted to Met Ed provides, in part: "Together with the right from time to time to clear and entirely remove everything, including buildings . . ."

7. After the easement was granted to Met Ed, a dwelling was constructed on the premises by a predecessor in title to defendants Rittberg.

8. At the time of the agreement of sale, the dwelling on the Rittberg property encroached on the Met Ed easement to the extent of 5.83 feet on the western side of the dwelling and 2.66 feet on the eastern side of the dwelling.

9. The poles and wires of Met Ed are clearly visible on the Rittberg property, but there is nothing that visibly indicates that the dwelling encroaches on the easement.

10. On August 13, 1973, defendants Dibilio applied for a mortgage from the Easton National Bank and Trust Company.

11. On September 5, 1973, the application was orally approved subject to a certification by a member of the Northampton County bar that there would be a good and marketable title to the property.

12. Subsequently, the attorney for defendants Dibilio informed the bank of the encroachment of the dwelling upon the easement of Met Ed and the bank cancelled the mortgage commitment.

13. Defendants Dibilio refused to complete settlement, alleging that the title offered by Rittberg did not conform with that required by the agreement of sale and that a mortgage loan could not be obtained.

14. Defendants Rittberg refused to allow Frinzi to release the earnest money deposit to Dibilio, contending that the title did conform with the agreement of sale and that there was a mortgage commitment.

15. As a result, both Rittberg and Dibilio claim the $3,675 earnest money deposit held by Frinzi.

16. Defendants Dibilio incurred an expense in the amount of $200 in having the title to the premises searched.

## DISCUSSION

Defendants Dibilio contend they are entitled to the deposit money based on two theories: (1) The Rittberg's title was unmarketable, and (2) because of the encroachment of the dwelling onto the Met Ed easement a mortgage loan commitment could not be obtained.

The crux of the Dibilio's first argument is that while they agreed to purchase the Logan Drive property subject to the rights and privileges of public utility companies, they are not compelled to

purchase under an agreement of sale when a dwelling is built substantially encroaching onto the pre-existing easement of Met Ed. This question then turns on the language of the agreement of sale, paragraph 7(a) which states, in part, "EXCEPTING HOWEVER . . . privileges or rights of public service companies." In order to sustain the Dibilio position, a distinction must be drawn between the effect of the mere existence of an easement or right-of-way of a public utility company, and the existence of an actual structural encroachment or violation of the rights of the dominant tenant.

We are of the opinion that such a distinction is appropriate. The reason that the title was not marketable was not because of the easement granted to Met Ed, but because a dwelling was built encroaching onto that right-of-way. In this regard, it has been held in the Commonwealth that a title was not marketable when the agreement of sale provided that the property be "free and clear of all liens and encumbrances, excepting existing restrictions and easements, if any," and it was later discovered that the dwelling on the premises was constructed in violation of a pre-existing zoning ordinance: Moyer v. DeVincentis Con. Co., 107 Pa. Superior Ct. 588, 164 Atl. 111 (1933).

While it is true that neither Dibilio nor Rittberg knew of the defective title prior to the signing of the agreement of sale, it is clear that the easement granted to Met Ed could lead to future litigation and interfere with the Dibilios' future use and enjoyment of the premises. Therefore, the title is doubtful and value of the land is diminished because a dwelling was constructed on the lot encroaching onto the easement of Met Ed. See Jeffrey Struc-

tures, Inc. v. Grimaldi, 186 Pa. Superior Ct. 437, 142 A. 2d 378 (1958). Rittberg agreed to tender the entire lot at 8 Logan Drive "with buildings and improvements thereon erected." Because of the encroachment onto Met Ed's easement, the dwelling could be demolished at any time. Thus, Rittberg could not convey "good and marketable title" and Dibilio is entitled to a return of the earnest money deposit.

Since the court finds that Rittberg could not convey marketable title as required in the agreement of sale, it is unnecessary to consider the second issue concerning the mortgage loan commitment.

The final issue concerns the $200 claim by Dibilio against Rittberg for the cost of the title search. The law of the Commonwealth is that the judgment in an interpleader action is against the fund in issue rather than taking the form of a money judgment against the unsuccessful claimant: Nell v. McCrea, 16 D. & C. 2d 555, 9 Cumb. 12 (1958); Hollander v. Friedman, 360 Pa. 20, 59 A. 2d 892 (1948). It is clear then that while Dibilio is entitled to a return of the earnest money deposit, they are not entitled to the $200 cost of the title search in this interpleader action.

Wherefore, we enter the following

## CONCLUSIONS OF LAW

1. Defendants Dibilio are entitled to a return of the earnest money deposit in the amount of $3,675 from plaintiff.

2. Defendants' Dibilio demand for the amount of $200 from defendants Rittberg as a cost incurred for title search is denied.

Wherefore, the court enters the following

## DECREE NISI

And now, October 1, 1974, it is ordered and decreed that plaintiff is to pay the $3,675 earnest money deposit in his possession to defendants Dibilio.

This decree shall be entered as a decree nisi, and shall become final unless exceptions are filed within 20 days.